UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| BILL SHAWVER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3: 09-02-DCR |
| ) | |
| V. ) | |
| ) | |
| BRADFORD SQUARE NURSING, LLC ) | |
| d/b/a BRADFORD SQUARE ) | **MEMORANDUM OPINION** |
| REHABILITATION & NURSING ) | **AND ORDER** |
| CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

*** *** *** ***

This matter is pending for consideration of the Plaintiff Bill Shawver's ("Shawver") motion to remand for lack of subject matter jurisdiction. [Record No. 3] Shawver argues that diversity of citizenship is lacking because both he and Defendant Dana Marshall ("Marshall") are citizens of Kentucky. Consequently, he asserts that remand is required. [Record No. 4] However, the Defendants[1] argue that Marshall was fraudulently joined as a Defendant and, as a result, her citizenship should not be considered for the purposes of establishing diversity jurisdiction. [Record No. 6] Having reviewed the materials filed by the parties, the Court concludes that the Defendants have failed to establish that Marshall was fraudulently joined as

---

[1] Eight parties remain as Defendants in this case: (1) Senior Care, LLC; (2) Bradford Square Nursing, LLC; (3) Dana Marshall, in her capacity as administrator of Bradford Square Rehabilitation & Nursing Center; (4) HBR Kentucky, LLC; (5) Harborside Administrative Services, LLC; (6) Harborside Holdings I, LLC; (7) Sunbridge Healthcare Corp.; and (8) Kentucky Holdings I, LLC.  All other Defendants have been dismissed.

-1-

a Defendant. Accordingly, Shawver's motion will be granted and this case will be remanded to the Franklin Circuit Court.

### I.     Background

On June 17, 2005, Grace Shawver ("Ms. Shawver") was admitted to Bradford Square Rehabilitation & Nursing Center ("Bradford Square") in Frankfort, Kentucky. She resided there until February 20, 2006, when she was transferred to the Frankfort Regional Medical Center. On February 28, 2006, the Frankfort Regional Medical Center discharged Ms. Shawver, and she was transferred to the Beverly Health and Rehab Center of Frankfort. She died approximately four months later on July 7, 2006. Shawver was subsequently appointed as the administrator of his mother's estate. [Record No. 3, pp. 2–3]

On January 22, 2008, Shawver filed an action on behalf of the estate in Franklin Circuit Court. [Record No. 1, Ex. C1] Thereafter, on June 30, 2008, Shawver filed an Amended Complaint which included a negligence claim against Marshall in her capacity as the former administrator of Bradford Square. [Record No. 4, Ex. A, pp. 18–30] On January 7, 2009, the action was removed to this Court based on diversity jurisdiction.[2] [Record No. 1]

Shawver contends that removal was improper because both he and Marshall are citizens of Kentucky. [Record No. 4, p. 4; Record No. 6, p. 3] However, the Defendants assert that removal was proper and that complete diversity exists because Marshall was fraudulently joined as a Defendant. In support, the Defendants argue that the negligence claim against Marshall is

---

[2]     This is the second time the Defendants have removed the case. This Court previously remanded this matter on June 5, 2008, after determining that it lacked subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint presented no federal question.

barred by a one-year statute of limitations and that Shawver's deposition testimony confirms there is no reasonable basis for predicting that Kentucky law would impose liability on Marshall. [Record No. 6, pp. 4–10]

### II. Standard of Review

When considering a motion to remand, the Court must examine whether the case was properly removed to federal court. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). When, as here, the action was removed based on diversity jurisdiction, complete diversity between all plaintiffs and defendants must exist at the time of removal. *Id.* at 492–93. While diversity jurisdiction normally requires that all opposing parties be citizens of different states, the Sixth Circuit recognizes that fraudulent joinder of a non-diverse defendant will not defeat removal on diversity grounds. *Id.* at 493 (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994)). *See also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that "fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity").

Despite the misnomer, fraudulent joinder does not require any showing of improper motive or fraud. Rather, the relevant consideration is whether the facts alleged could support a valid cause of action against the allegedly fraudulently-joined party. *Simpson v. GGNSC Admin. Servs., LLC*, No. 3:08-02, U.S. Dist. LEXIS 22646, *5–6 (E.D. Ky. Mar. 20, 2008). As the Sixth Circuit explained in *Coyne*:

> To prove fraudulent joinder, the removing party must present evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must

> remand the action to state court. The district court must resolve all disputed questions of act and ambiguities in the controlling state law in favor of the non-removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne*, 183 F.3d at 493 (internal citations and quotations omitted). *See also Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 530 (6th Cir. 2007) (explaining that a defendant must show that a fraudulently-joined party is not a real party to the controversy in order to succeed on a claim of fraudulent joinder).

### III.   Analysis

#### A.   Timeliness of Removal

This action was commenced on January 22, 2008. The Defendants first removed this matter on March 31, 2008, on the basis of federal question jurisdiction. Shawver filed an Amended Complaint on June 30, 2008, and the Defendants removed this matter a second time on January 7, 2009, on the basis of diversity jurisdiction. This second removal is well outside of the thirty-day removal window required by 28 U.S.C. § 1446(b). However, the Defendants claim that "Plaintiff's Complaint was unclear as to the precise claims against Marshall and until Plaintiff confirmed [in his deposition testimony] that his claims sounded in negligence, Bradford Square was not on 'notice' that the case was removable." [Record No. 6, p. 7, n.11] Thus, the Defendants rely on the second paragraph of 28 U.S.C. § 1446(b) which states that:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . .

*Id.* The Sixth Circuit has held that "a plaintiff's responses to deposition questioning may constitute an 'other paper' under Section 1446(b)." *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 466 (6th Cir. 2002).

Shawver disputes the Defendants' claim and argues that the "initial complaint set forth in great detail his negligence claim against Defendant Marshall in her capacity as an Administrator of the [Bradford Square] facility." As a result, he contends that "the initial pleading and the amended pleading were sufficient to put Defendants on notice that the case was potentially removable based on the statute of limitations . . . " [Record No. 9, p. 3]

In his original Complaint, Shawver labels the cause of action against Marshall as "Negligence." [Record No. 1-6, p. 18] Shawver continues in his initial complaint to set forth in great detail his negligence claim against Marshall. [Record No. 1-6, pp. 18–25] The undersigned concludes that the initial and the Amended Complaint set forth a negligence cause of action Marshall. Further, the original Complaint denotes the time frame within which Ms. Shawver was a resident of Bradford Square, stating that "Grace Shawver was a resident of Bradford Square . . . at times from June 17, 2005 until February 20, 2006 when she was transferred to Frankfort Regional Medical Center." [Record No. 1-6, p. 3] Because the negligence claim against Marshall is clearly set forth in both the initial and Amended Complaint, the Defendants' assertion that they were "not on 'notice' that the case was removable" until Shawver gave his deposition testimony seems farfetched. However, even if the Defendants are given the benefit of the doubt on this issue, this matter must still be remanded. For the reasons

discussed below, the Defendants have not carried their burden of establishing that Marshall was fraudulently joined as a Defendant.

### B.     The Applicable Statute of Limitations is Tolled.

Under Kentucky law, all negligence claims are subject to a one-year statute of limitations. KRS § 413.140. The Defendants argue that the negligence claim is time barred because "Plaintiff did not file this lawsuit until January 22, 2008, over two years after Marshall left the facility." [Record No. 6, p. 6] However, Shawver contends that the "one year statute of limitations was tolled due to the fact that Ms. Shawver was of unsound mind during her residency, and the disability was not removed until her death on July 7, 2006; thereafter, Plaintiff had one year within to file a complaint after being appointed administrator of Ms. Shawver's Estate." [Record No. 4, p. 23] Kentucky law allows for tolling of the one-year statute of limitations "if at the time the cause of action accrued," the plaintiff was "of unsound mind." KRS § 413.170(1). The term "unsound mind" in KRS § 413.170(1) has been interpreted by the Supreme Court of Kentucky to mean that the person claiming the disability must show that he or she has been rendered incapable of managing his or her own affairs. *See Southeastern Kentucky Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988). Once the statute of limitations issue is raised, the Plaintiff must prove facts that would toll the statute. *Id.*

The Defendants contend that the statute of limitations should not be tolled and that Shawver's "recollection of his own mother's mental capacity and her ability to explain the circumstances of her fall defeats any tolling argument." [Record No. 6, p. 8] In support, the Defendants rely on the following portions of Shawver's deposition testimony:

> Q. Okay. Can you describe to me your best recollection of what your mother's health condition was while she lived with you?
>
> A. She was in pretty good health physically. She had some touches of dementia. She couldn't hear well. She would occasionally stumble. After a while, we noticed this, and so one of us generally always took her to the bathroom or helped her to the table, so she wouldn't fall.
>
> Q. Okay.
>
> A. Other than that, her mind was great. She could come back and tell me things out of an English book and history books that I never heard of before.
>
> *****
>
> Q. Okay. Did you talk to your mother about her fall?
>
> A. At the hospital, I did.
>
> Q. What did she have to say about it?
>
> A. That she fell off the commode. She didn't have anything to hold onto and the guy had left her alone. It was a man, though. She didn't like to complain a whole lot.

[Record No. 6, p. 8]

In contrast, Shawver argues that the tolling provision applies because "Ms. Shawver was of unsound mind during her entire residency at the Bradford Square facility." [Record No. 9, p. 5] He asserts that:

> Defendants focus only on Plaintiff's lay testimony on this topic while completely ignoring what was said about Ms. Shawver's mental status by Jeanette Powers, Defendants' own representative, who is a medical professional and was the Director of Nursing during Ms. Shawver's residency. Moreover, Defendants do not take into account the mountain of medical records indicating that Ms. Shawver was of unsound mind since the very beginning of her residency.

[*Id.*, pp. 5–6]

Under the facts presented, there is sufficient evidence to support the Plaintiff's argument that Ms. Shawver was of unsound mind such that she could not have managed her own affairs at the time her cause of action accrued. Ms. Shawver's medical records indicate that, as early as 2004, she was diagnosed with, and subsequently treated for, dementia. [*Id.*, p. 6] Upon her admission to Bradford Square in 2005, medical personnel indicated on Ms. Shawver's Admission Assessment sheet that Ms. Shawver was oriented only to herself and experienced periods of confusion. [*Id.*] In addition, subsequent treatment notes reference Ms. Shawver's confusion, further noting Ms. Shawver's daily decision-making abilities were "moderately impaired" and that Ms. Shawver's mental condition continued to deteriorate. [Record No. 9, pp. 6–9] In 2006, a Comprehensive Status Exam declared that "Ms. Shawver did not know the day, month or year; did not know where she was; could not spell "dog" forward and backwards; and could not repeat a simple phrase." [*Id.*, p. 9] Since there is sufficient evidence that Ms. Shawver was of "unsound mind" at the time her cause of action accrued, the one-year statute of limitation was tolled pursuant to KRS § 413.170(1) until July 7, 2006, the date of her death.

Although tolling of the statute of limitations pursuant to KRS § 413.170(1) ceased upon Ms. Shawver's death, an additional tolling provision applies. KRS § 413.180(1) provides that:

> If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative.

KRS § 413.180(1). As the Supreme Court of Kentucky explained in *Conner v. George W. Whitesides Co.*, 834 S.W.2d 652 (Ky. 1992), "[t]he purpose of KRS 413.180 is to allow time for

the appointment of a personal representative and then to give that personal representative time to evaluate claims and determine whether to pursue those claims." *Id.* at 654.

It is undisputed that Ms. Shawver died on July 7, 2006, and the Plaintiff was not appointed as administrator of the estate until January 22, 2007. This action was commenced on January 22, 2008 – exactly one year after his appointment and qualification as administrator. Thus, although Shawver filed this claim outside the applicable one-year statute of limitations, he has satisfied his burden of proving that the statute of limitations was tolled pursuant to KRS §§ 413.170(1) and 413.180. Accordingly, the negligence claim asserted against Marshall is not time barred under KRS § 413.140.[3]

### C. Marshall is Not a Fraudulently Joined Defendant.

Shawver's negligence claim against Marshall arises out of Marshall's duties as the former administrator for Bradford Square. Under Kentucky law, nursing home administrators owe a "universal duty of care" to the residents, which means that they "owe a duty to exercise ordinary care and to prevent foreseeable harm." *Simpson*, 2008 U.S. Dist. LEXIS 22646, at *7. In addition, a nursing home administrator is potentially liable for injuries sustained by residents under the administrator's care. *Lindsey v. Kentucky Med. Investors, Ltd.*, No. 7:05-116, 2005 U.S. Dist. LEXIS 46431, *15 (E.D. Ky. Sept. 19, 2005) (concluding that [*Murphy v. EPI Corp.*, No. 2002-002173, 2004 WL 405754 (Ky. Ct. App. Mar. 5, 2004) (unpublished)] "creates, at the

---

[3] Shawver raises an alternative argument that the Defendants waived their statute of limitations defense because "the initial pleading and the amended pleading were sufficient to put Defendants on notice that the case was potentially removable based on the statute of limitations, yet they did not raise the issue until now." [Record No. 3, p. 3] This argument is moot in light of the Court's finding that the statute of limitations was tolled.

very least, potential liability on behalf of nursing homes, as well as their administrators and other personnel, for injuries sustained by residents under their care"). Despite this authority, the Defendants argue that the following portion of Shawver's testimony demonstrates that he could not succeed on the negligence claim asserted against Marshall:

> Q. Okay. Do you recall – well, first of all, have you told me everything that the Bradford Square facility did wrong in your mind?
>
> *****
>
> Q. I'll be happy to review it. You said that you sued them for a number of reasons: No. 1 because your mom fell; No. 2, you thought the place was dirty; No. 3, they weren't giving respiratory therapy that you know of; No. 4, they weren't getting your mother to participate in physical therapy; No. 5, your mom wasn't eating very well there; No. 6, you blame them for your mom having a feeding tube; and No. 7, you think they killed your mother.
>
> A. That's true.
>
> Q. Okay. Anything else, other than that list?
>
> A. Not that I can think of.
>
> *****
>
> Q. Why did you sue Dana [Marshall]?
>
> A. The people that hurt mom worked for her. It's her responsibility ultimately.
>
> *****
>
> Q. If she quit working for the facility in December of '05 and your mom fell in February of '06, is she responsible for that?
>
> Q. If she's no longer even there?
>
> A. To a certain degree. Who hired and trained the people that are doing that? It had to be the administrator. They don't get a guy off the street to come in and do that.

> Q. Is it your testimony that Dana Marshall, as administrator, trained the nurses at the facility?
>
> A. No, ma'am. She trained the management of the nursing facility. I'm sure there's more than one manager. She was the overall. Okay? Then you have several people that work below her in another category. Would she not have selected and trained those people to do what happened.
>
> Q. Well, do you know if she did?
>
> A. No.

[Record No. 6, pp. 4–5]

The Defendants assert that this testimony establishes that Marshall could not be held liable, because "there is no Kentucky case in which a former employee has been held liable . . . for acts that were committed *after* that employee left the employment of the defendant."[4] [*Id.*, p. 10] However, the fact that some of the events alleged in the Amended Complaint occurred after Marshall stopped working at Bradford Square does not necessarily mean that she could not be liable for negligence. The essence of the negligence claim is her alleged negligence in hiring, train, and supervising the staff, and her alleged failure to operate, manage, or administer Bradford Square in compliance with federal, state, and local laws, regulations, and codes. [Record No. 4, Ex. A, pp. 18–25]

In addition, by focusing solely on Shawver's deposition testimony, the Defendants construe the negligence claim against Marshall too narrowly. In the Amended Complaint, Shawver sets forth in great detail his negligence claim against Marshall, which includes alleged

---

[4] Ms. Shawver's fall and her placement on a feeding tube both occurred after Marshall stopped working at Bradford Square. Also, Ms. Shawver's failure to receive respiratory therapy and death occurred after she had been discharged from Bradford Square. [Record No. 6 p. 6]

breaches of the standard of care during Marshall's employment at Bradford Square. [Record No. 4, Ex. B, pp. 18–25]

The Defendants do not cite – and the Court has not found – any case holding that a negligence claim, predicated upon events occurring both before and after the administrator left the facility, is barred. The Defendants rely upon *Clark v. Kentucky*, 229 F. Supp. 2d. 718, 713 (E.D. Ky. 2002) in support of their argument that, "without some involvement in the specific act complained of, Kentucky law does not recognize liability against an individual." [Record No. 6, p. 10] However, as Shawver correctly points out, *Clark* discussed, *inter alia*, the "liability of government officials under § 1983, which must be based on active constitutional behavior and not on 'a mere failure to act.'" [Record No. 4, p. 15] The present case was not brought under § 1983, nor is Marshall a government official. Therefore, this case is materially distinguishable from *Clark*.

In summary, the Defendants have failed to carry their burden to demonstrate that Shawver cannot establish a viable cause of action against Marshall under Kentucky law. Since there is a colorable basis for predicting that Shawver might recover on the negligence claim, Marshall's joinder as a defendant is not fraudulent. *See Coyne*, 183 F.3d at 493.

### IV.   Conclusion

The Defendants have not met their burden of showing that Marshall was fraudulently joined as a Defendant. Therefore, her citizenship must be considered when evaluating whether diversity jurisdiction exists. This Court lacks subject matter jurisdiction over this action, because both Shawver and Marshall are Kentucky citizens. Accordingly, it is hereby

**ORDERED** that the Plaintiff Bill Shawver's motion to remand for lack of subject matter jurisdiction [Record No. 3] is **GRANTED** and this matter is remanded to the Franklin Circuit Court pursuant to 28 U.S.C. § 1447(c).

This 9th day of April, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge